```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA       *    Case No. 19-MJ-531(CLP)
                               *
                               *    Brooklyn, New York
                               *    June 7, 2010
     v.                        *
                               *
ASHIQUL ALAM,                  *
                               *
          Defendant.           *
                               *
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

          TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
            BEFORE THE HONORABLE CHERYL L. POLLAK
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:            JONATHAN ALGOR, ESQ.
                               DAVID K. KESSLER, ESQ.
                               MICHAEL T. KEILTY, ESQ.
                               Asst. United States Attorney
                               United States Attorney's Office
                               271 Cadman Plaza
                               Brooklyn, NY 11201


For the Defendant:             JAMES DARROW, ESQ.
                               Federal Defenders of New York,
                                Inc.
                               One Pierrepont Plaza, 16th fl.
                               Brooklyn, NY  11201




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1              (Proceedings commenced at 3:11 p.m.)

2              THE CLERK:  Criminal cause for an arraignment.

3    It's 19-M-531, United States vs. Ashiqual Alam.

4              Counsel, state your appearances, please.

5              MR. ALGOR:  Good afternoon, Your Honor.

6              Jonathan Algor, David Kessler and Michael Keilty

7    for the United States.

8              THE COURT:  Good afternoon.

9              MR. DARROW:  Good afternoon.  James Darrow, Federal

10   Defenders of New York, for Mr. Alam.  Also present at the bar

11   is Ashley Brooks, a legal intern in my office.

12             THE COURT:  Mr. Alam, I take it that you understand

13   English?

14             THE DEFENDANT:  Yes.

15             THE COURT:  If at any point something is said that

16   you don't understand, please let me know.  Okay?  Yes?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  You have to answer me orally because

19   we're recording the session.

20             THE DEFENDANT: Yes.

21             THE COURT:  The purpose of this proceeding this

22   afternoon is to make sure you understand the crime you've

23   been charged with, to make sure that you understand that you

24   have the right to be represented by an attorney and to decide

25   whether you would be released on bail, or held in jail until

3

1    your trial on these charges.

2           You don't have to say anything here today.  If you

3    start to say something, you can stop at any time.  But what

4    you must understand is that anything you do say, except what

5    you say to Mr. Darrow, your attorney, anything else can be

6    used against you.

7           Do you understand that?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Okay.  Have you seen a copy of the

10   complaint ?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  Yes?

13          THE DEFENDANT: Yeah.

14          THE COURT:  You understand that you've been charged

15   with knowingly and intentionally possessing and receiving

16   firearms, specifically, two Glock 19 9-millimeter semi-

17   automatic pistols which have the manufacturer's serial

18   numbers removed.

19          Do you understand what you've been charged with?

20          THE DEFENDANT:  Yeah.

21          THE COURT:  Okay.  Now the court has appointed Mr.

22   Darrow to represent you for purposes of these proceedings

23   today and all other proceedings in connection with these

24   charges.

25          You have the right to be represented by an attorney

1        from this point forward.

2                    Do you understand that?

3                    THE DEFENDANT:  Yes, ma'am.

4                    THE COURT:  Okay.

5                    Mr. Darrow, have you reviewed the complaint with

6        your client and advised him of his rights?

7                    MR. DARROW:  Yes, Your Honor.

8                    THE COURT:  And what's the government's position

9        with respect to bail for Mr. Alam?

10                   MR. DARROW:  Your Honor, it's the government's

11       position that there is no condition or combination of

12       conditions that can address the defendant's danger to the

13       community and risk of flight and we're seeking a permanent

14       order of detention.

15                   And we have filed a detention memorandum to that

16       effect.  It's currently under seal, per the court's order,

17       but I'm ready further to address our position.

18                   THE COURT:  Well, Mr. Darrow, have you seen the

19       government's letter?

20                   MR. DARROW:  I have, Your Honor.

21                   THE COURT:  And have you reviewed it with your

22       client?

23                   MR. DARROW:  We've discussed it.

24                   THE COURT:  Okay.  How do you want to proceed at

25       this moment?

1           MR. DARROW:  Well, Your Honor, we do have a bail

2    package to present.  Whether a formal detention hearing is

3    necessary I think we can talk about.

4           Just so Your Honor knows we are requesting that my

5    client be released on a $200,000 secured bond to be signed by

6    both of his parents, who are here in court today, both of

7    whom were interviewed by Pretrial Services.

8           The bond would be secured by the apartment where my

9    client lives with his parents.  My understanding, Your Honor,

10   is that there is $200,000 in equity in the home.  That's

11   based on discussions with my clients parents, who are both

12   the deed holders.

13          In addition, Your Honor, we would ask that my

14   client be on home confinement for the duration of the case.

15          We would ask that he have an ankle monitor affixed

16   because as Your Honor knows as -- from the Pretrial report,

17   he's a rising senior at John Jay College and he works two

18   jobs. We would like for him to continue doing that.

19          I'll note, Your Honor, that when you sort of strip

20   away the things that the press reports have been focused on

21   in this case, what we have and what the government has

22   undertaken to charge in this case is a zero to five gun

23   charge.

24          And, therefore, it's not a presumption case.  It's

25   not a crime of violence.  My client is an LPR who's lived

6

1   here with his mother and father for 12 years, Your Honor.

2          The only international travel I'm aware of was

3   travel that he undertook with his family to Bangladesh twice

4   during school breaks. He is a student who works two jobs.  He

5   has no criminal history of any kind.

6          So it's our view, Your Honor, that that package is

7   sufficient to deal with any risk of flight.  If the

8   passport's an issue, we can arrange, I'm sure, to get it back

9   to Pretrial Services.

10          My understanding is it's an expired Bangladeshi

11   passport, but I'm happy to go myself and get it and bring it

12   back, if necessary.

13          And as to any dangerousness, I mean, the fact of

14   the matter is the man will be locked in his home with an

15   ankle bracelet on and I'm happy to -- I'm open to other

16   conditions as necessary, as the court feels is necessary.

17          But as alleged, this is a transaction that occurred

18   between my client to law enforcement agents.  So there's no

19   allegation that he is talking to strangers about these sorts

20   of things, or talking to anybody else who's not fully aware

21   on the government's side of what exactly is going on.

22          So it's for that reason, Your Honor, that we're

23   proposing this bail package.

24          MR. KESSLER:  Your Honor, if I --

25          THE COURT:  Let me just -- so you requested an

7

1    order sealing the government's letter --

2              MR. DARROW:  Yes, Your Honor.

3              THE COURT: -- in order to respond to your bail

4    application I believe they have to state some of the facts as

5    set forth in the letter.

6              MR. DARROW:  Of course they do, Your Honor.  That

7    makes sense.

8              THE COURT:  Okay.  So I'm going to permit them to

9    respond.

10             MR. DARROW:  Yes, Your Honor.

11             THE COURT:  Okay.  Because you put forward a

12   package. I think we need to address the concerns that the

13   government raised as to why this package is not sufficient.

14             MR. KESSLER:  Agreed.  So, Your Honor, briefly,

15   under the Bail Reform Act, the nature and circumstances of

16   this offense are extremely serious.  It's not a gun charge.

17   The defendant attempted to purchase two semi-automatic

18   firearms with obliterated serial numbers. The only reason you

19   would want a serial number obliterated is because you didn't

20   want the gun traced to you.

21             He attempted to purchase a silencer.  He expressed

22   interest in a silencer again.  That's a disturbing fact.

23             And then more broadly than simply the purchase of

24   the weapons on the date alleged in the complaint, the

25   defendant has taken specific steps to plan an attack in New

8

1     York City.

2               So as detailed in the complaint and as in our

3     detention memo, the defendant developed a specific plan to

4     attack Times Square.  He researched firearms and explosive

5     devices.

6               He talked about how to construct explosive devices.

7     He conducted multiple reconnaissance trips, including

8     videotaping potential target area.

9               He had Lasik eye surgery, and as he explained it be

10    able to shoot more accurately.  That's my paraphrase.

11    And then he went and actually took the step of trying to

12    acquire two different firearms.

13              So the nature and circumstances of this offense are

14    extremely serious.

15              Second of all, the weight of the case is absolutely

16    overwhelming. The purchase of the firearms is on video and

17    the defendant's other interactions, as detailed in the

18    complaint, are recorded in some form or another.  So the

19    weight is overwhelming.

20              The defendant's circumstances, he does have family

21    in another country.  That gives him a place to flee.

22              As the Pretrial Services report lays out, he has

23    unexplained assets.  I'll note that the recommendation in

24    that report is that the defendant should be detained.

25              And finally with respect to the conditions sought

9

1    by the defendant, you know, an ankle monitor and a locked

2    door do not adequately address the kind of danger we're

3    talking about in a case like this.

4            So I'm happy to detail more of the facts that are

5    laid out in the detention memorandum.  I think at this point

6    the memorandum should be unsealed generally because we're

7    relying on all the facts in there and the facts I laid out.

8    But that's our position.

9            Certainly, this bail package does not address these

10   concerns, but it's the government's position that there is no

11   set of conditions that would address them.

12           THE COURT:  All right.  Mr. Darrow, anything to

13   respond to --

14           MR. DARROW:  Yes, yes.  I mean, look. The fact of

15   the matter is this case is charged the way it is. It's

16   charged as a zero to five firearm charge.  I understand that

17   the government's allegation is that there is this specific

18   plan of an attack, but he's not charged with terrorism.  He's

19   not charged with the terrorism type allegations that are set

20   forth in the memorandum.  He is charged with what he is

21   charged with.  And so that's what I'm directing my arguments

22   to.

23           What I would request, Your Honor, is that if Your

24   Honor's inclined to make a finding of dangerousness based on

25   these non-firearm related allegations, I think what we need

1    is a formal detention hearing where evidence can be presented

2    as to his dangerousness in that regard.  Because insofar as

3    this going of the actual complaint and relying on other

4    things, I think there needs to be a formal finding based on

5    evidence in that regard.

6              I will notice -- just noted, Your Honor, in terms

7    of these unexplained assets, I'm not entirely sure what that

8    was referring to.  I will note though, Your Honor, that my

9    client does work two jobs and he is extremely hard working

10   and he saved a bunch of money.

11             So I'm not sure that that is a factor here.  My

12   client couldn't flee if he wanted to.  The fact that he was

13   born in another country is not something that he can help.

14   He has a green card and, therefore, a right to bail.

15             So it's not the case if you're born in a foreign

16   country and have some family there you're automatically

17   denied bail. I didn't understand the government to be saying

18   that.

19             So I guess what I'm saying, Your Honor, is we think

20   our package is sufficient as to these charges.  But to the

21   extent that these other larger terrors and related

22   allegations are what the government's going to be relying on

23   are germane to Your Honor, what I would request is that we

24   put this over for an actual formal detention hearing where

25   evidence can be presented in that regard.

1          THE COURT:  I guess I was a little confused because

2      I thought I heard you say that these were not things that are

3      alleged in the complaint.  That they actually are --

4          MR. DARROW:  I meant -- when I said complaint -- I

5      mean, look.  I think there are -- some of these allegations

6      are set forth in the complaint.  Others of them are set forth

7      and were detailed in the detention memo that was filed before

8      Your Honor.

9          But I think what the government is doing is

10     alluding to them to present a picture of dangerousness that

11     is outside what is strictly relevant for consideration of the

12     charge, which is receipt of, as alleged, two firearms with

13     obliterated serial numbers.

14         That has nothing to do with a planned attack on

15     Times Square or anything else that's been the subject of

16     press reports, et cetera.

17         So my point, Your Honor, is that to the extent that

18     that is the basis of the detention that is being sought, it

19     should take the form of an actual hearing with evidence

20     presented for showing of dangerousness, if the government can

21     do that.

22         MR. KESSLER:  So the Bail Reform Act does not, you

23     know, say read the statute and then whatever the words in the

24     statute are, that's how you do the bail analysis.

25         The question is what are the nature and

12

1    circumstance of this offense.  The nature and circumstances

2    of this offense are the ones laid out in the complaint and

3    they're far broader than just the receipt of a gun, whether

4    you call them terrorism charges or something -- terrorism or

5    something else.

6            The point is the events alleged in the complaint

7    are as they're alleged, you know, to have happened.  And all

8    of those are in front of the court to consider in terms of

9    determining whether the defendant poses a danger to the

10   community.

11           You know, it could be in another situation, someone

12   charged with the same charge might not be a danger to the

13   community, or there might be a set of conditions that could

14   address that danger. But that's not the case here.

15           So with respect to a hearing, you know, the

16   government is entitled to proceed by proffer of evidence.

17   We've preferred the evidence, the evidence as laid out in the

18   complaint. And as I said, the evidence is almost entirely

19   from recordings.

20           So we don't even think a hearing is necessary to

21   address a finding of dangerousness.  Certainly, not for

22   purposes of today.

23           Well, let me say this. I've read the complaint very

24   carefully and relying just on the allegations in the

25   complaint and not any extraneous statements in the

13

1    government's letter that might not have been included

2    specifically in the complaint, I find that regardless of what

3    the charge before the court is here, which is, as you say,

4    limited at this moment to the receipt of two semi-automatic

5    pistols which, by the way, with their serial numbers

6    obliterated is a pretty serious offense in and of itself.

7          I find that based on all of the other circumstances

8    under which he purchased the guns and his stated intent,

9    which as the government indicates seems to be on recorded

10   conversations.  So, therefore, something that is pretty well

11   established or will be in terms of the recordings. I assume

12   they're all -- when they're quoted in the complaint, that

13   means they're recorded somewhere, correct?

14         So based on all of that and my consideration of you

15   bail package, which had this been any other set of

16   circumstances, simply the purchase of these firearms without

17   all of the background information, I might find it

18   sufficient.

19         But at this point I'm finding that he is a danger

20   to the community and I'm going to order him permanently

21   detained.

22         I also find that even with the bail package he's a

23   risk of flight.  These are serious charges. The government's

24   allegations are serious as well and he has ties to

25   Bangladesh. He's gone back there. He is a citizen, I take it,

14

1    of Bangladesh.  So there is a risk of flight as well.

2              But basically I'm relying on the dangerousness

3    element, which I find the government has proved by clear and

4    convincing evidence.

5              So I'm going to order him detained.  I guess the

6    question that remains is whether or not you want me to set a

7    date for the indictment.

8              MR. DARROW:  I do, Your Honor.  We request a

9    preliminary hearing.

10             THE CLERK:  So June 21st at 11 a.m.

11             MR. DARROW:  Thank you.

12             THE CLERK:  You're welcome.

13             THE COURT:  Anything else --

14             MR. DARROW:   No, Your Honor.

15             THE COURT:  Okay.

16             MR. KESSLER:  Your Honor, two additional things

17   very briefly.

18             First, just for the record, counselor notification

19   has been made.

20             THE COURT:  Okay.  Thank you.

21             MR. KESSLER:  Second of all, with respect to the

22   detention letter that was filed, I understand it's still

23   under seal and we're not asking the court, unless the court

24   is already inclined to unseal it at this moment.

25             However, we'll note that detention memoranda like

1    that one are judicial documents for which there's a

2    presumptive right of public access.

3           And it will be the government's position that the

4    document should be unsealed subject to any, you know,

5    narrowly tailored redactions necessary to protect personal

6    information or for that sort of consideration.

7           THE COURT:  Well, in that regard what I'm going to

8    ask Mr. Darrow to do is confer with you about anything

9    specific in the detention letter that should be redacted and

10   present them to me.  Once I see that I will order the letter

11   unsealed.

12          MR. KESSLER:  Thank you.

13          MR. DARROW:  I'd be happy to do that, Your Honor.

14   I just wanted to note in that regard, you know, Local Rule

15   23.1 doesn't require that the government can publish any

16   information subject only to private information being

17   redacted. It's really a much broader rule.  So that's going

18   to be the subject of our discussions.  And if we have any

19   dispute in that regard, we'll raise them with Your Honor.

20          THE COURT:  (Indiscernible).

21          MR. DARROW:  Thank you, Your Honor.

22          THE COURT:  Okay.

23          MR. KESSLER:  Thank you.

24          THE COURT:  Anything else?

25          MR. DARROW:   No, Your Honor.

16

1          THE COURT:  Thank you.

2          MR. KESSLER:  Thank you.

3       (Proceedings concluded at 3:28 p.m. )

4

5       I, CHRISTINE FIORE, Certified Electronic Court Reporter

6    and Transcriber, certify that the foregoing is a correct

7    transcript from the official electronic sound recording of

8    the proceedings in the above-entitled matter.

9

10

11

12

13   _____        June 8, 2019

14       Christine Fiore, CERT

15

16

17

18

19

20

21

22

23

24